# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6208 | **DATE** | 3/25/2002 |
| **CASE TITLE** | Norflo Holding Corporation, Inc. vs. City of Chicago, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____.  Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]   Enter Memorandum Opinion and Order.  The court grants the motion to dismiss of the City, Hill, Goode and Carter [#11] in its entirety.  The motion of Preckwinkle to dismiss [#10] is granted with respect to the due process claim of Count I, the equal protection claims of Counts I and II, the conspiracy claim of Count III, and the claim for breach of public trust in Count IV.  The motion of Preckwinkle is denied with respect to the Count I claim for violation of the First Amendment.  Defendant Preckwinkle is directed to answer the complaint by April 22, 2002.  A status hearing will be held on April 29, 2002 at 9:30. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 29 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/25/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

NORFLO HOLDING CORPORATION, INC.,   )
  )
      Plaintiff,   )
  )
      v.   )    No. 00 C 6208
  )
CITY OF CHICAGO,   )
TONI PRECKWINKLE,   )
RON CARTER,   )
WALLACE E. GOODE, JR., and   )
CHRISTOPHER HILL,   )
  )
      Defendants.   )

**DOCKETED**

MAR 2 5 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Norflo Holding Corporation, Inc. ("Norflo"), brought this civil rights action

under 42 U.S.C. §§ 1983 and 1985, against the City of Chicago ("City"), Toni Preckwinkle

("Preckwinkle"), the elected Alderman for the City's Fourth Ward; Ron Carter ("Carter"),

Wallace E. Goode, Jr. ("Goode"), and Christopher Hill ("Hill"), all agents and employees of the

City, alleging that defendants while acting under color of law violated and conspired to violate

Norflo's First, Fifth and Fourteenth Amendment constitutional rights.[1]  Norflo is an Illinois

---

[1]As the City points out, plaintiff pleads a direct violation of its constitutional rights as well as a violation of 42 U.S.C. § 1983. One's constitutional rights, however, must be vindicated through the statutory remedy provided by § 1983. *Bieneman* v. *City of Chicago*, 662 F. Supp. 1297, 1299-1300 (N.D. Ill. 1987) (relying on *Monell* v. *Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). Because plaintiff invokes this court's jurisdiction, in part, under 42 U.S.C. § 1343, the court takes the Complaint as pleading a § 1983 claim and disregards pleadings insofar as they assert a direct right of action under the Constitution. In addition, although Norflo specifically rests its claim for an attorney's fee under 42 U.S.C. § 1988 within Count II, its other claims also seek an attorney's fee and the court will treat the Complaint as pleading for fees in all the counts under § 1988. Finally, it is noted that a corporation has standing to bring an action under § 1983. *Fulton Mkt. Cold Storage Co.* v. *Cullerton*, 582 F.2d 1071, 1079 (7th Cir. 1978); *Adams* v. *City of Park Ridge*, 293 F.2d 585, 587 (7th Cir. 1961).

corporation engaged in the development of commercial and residential real estate, whose president and sole shareholder is Norman Bolden ("Bolden"). The court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343(a) (civil rights). Venue is proper in this district under 18 U.S.C. § 1391(a)(1) and (2). Before this court are motions by Preckwinkle and the City defendants' (all defendants other than Preckwinkle) to dismiss Norflo's complaint under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the court grants the motion of the City defendants and denies the motion of Preckwinkle with respect to part of Count I only. Her motion is otherwise granted.

## STANDARDS FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## FACTS

As a result of authorization stemming from the United States Department of Housing and Urban Development ("HUD"), in 1994 the City designated an Empowerment Zone ("EZ") and one or more Empowerment Communities ("EC"). EZs and ECs are authorized for economically

2

disadvantaged areas and are intended to be areas of concentrated economic development activity, for which federal and state funds ("EZ/EC funds") are available. In June, 1995, the City established the Empowerment Zone/Empowerment Community Coordinating Council ("Coordinating Council") to receive, review and make recommendations on all applications for allocations of the EZ/EC funds and to submit its recommendations to the City Council pursuant to Chapter 2-151 of the City Municipal Code.

On September 30, 1999, Norflo applied to the Coordinating Council, requesting a $598,958.00 grant to renovate two properties it owned, located at 1001-1013 E. 43rd Street and 1039-1043 E. 43rd Street (the "subject properties") within the Fourth Ward of the City, which is Preckwinkle's ward. The application called for the creation of a restaurant and retail space and proposed to create between 33 and 60 jobs for residents. On March 2, 2000, the Coordinating Council approved Norflo's application as well as 21 other applications, and all were to be submitted to the Budget Director of the City[2] and recommended to the City Council for funding.

Because at some time previously Norflo's properties were rented to Charles Williams as his campaign headquarters when he ran against Preckwinkle in the 1999 aldermanic election in the Fourth Ward, and because Bolden had been "a vocal and notorious supporter of Williams" (Compl. ¶ 66), Norflo believes that Preckwinkle undertook to undermine Norflo's application.

On April 13, 2000, both Preckwinkle and Carter, the EZ Office's Executive Director, attended a meeting of the Strategic Planning Ad Hoc Committee of the Coordinating Council. According to the minutes, Carter stated "that Norflo's project had been funded [*sic*] but would

---

[2]Before May 17, 2000, proposals were to be submitted to the commissioner of planning and development, but the City Council amended section 2-151-050(j) to substitute the "budget director" as of the May 17 date.

not be able to receive funds because its real estate site had been placed on the City's Acquisition List" by the Department of Planning and Development ("DPD"). (Compl. ¶ 26.) It was then indicated that Norflo's allocation of EZ/EC funds could be used to fund an application submitted by Hearts United, Inc., a not-for-profit corporation which had a joint venture proposal for $2 million with Bonheur Development Corporation ("Bonheur"), a private company and a contributor to Preckwinkle's aldermanic campaign.[3] The Coordinating Council had previously tabled this application because it failed to provide training, jobs and housing at the requisite level for the very people for whose benefit EZ/EC funds were intended. Even though Hearts United, Inc. never met the qualifications, at the instance of Carter and Preckwinkle, the Coordinating Council recommended it to receive EZ/EC funds, in part from the funds earmarked for Norflo.

On April 27, 2000, Bolden learned that Norflo's application would not receive EZ/EC funds because Norflo's properties were on the City's Acquisition List. Thereafter, Bolden produced a copy of the North Kenwood-Oakland Conservation Plan, which demonstrated that the properties were eligible for exemption from acquisition because they complied with the Building Codes of the City and because Norflo's application to the Coordinating Council provided for a plan of action and financing for the properties' development and renovation.[4] On May 4 and 5, 2000, Norflo requested the assistance of the DPD and the Mayor's Office to remove the

---

[3]According to Norflo's allegations, Bonheur had contributed $6,450 to Preckwinkle's campaigns since 1996. Bonheur's contractor, Linn-Maths, Inc., and its mortgagor, Prairie Mortgage Company, had also given Preckwinkle $3,500 since 1997, and $3,850 since 1995, respectively, and its architecture firm, Booth Hansen & Associates, had given Preckwinkle $2,500 in 1999.

[4]Norflo alleges that the Coordinating Council has inherent power to waive the Acquisition List restriction. Whether this is true or not, given that Norflo alleges that at least two other applications which involved properties on the Acquisition List received EZ/EC funds from the City Council, it may be inferred that the Coordinating Council does waive this restriction.

properties from the Acquisition List.

On June 2, 2000, Bolden met with Goode, who had succeeded Carter as Executive Director of the EZ Office, in an attempt to resolve the Acquisition List issue. Goode indicated that Norflo was a recommended applicant and that Goode would address Norflo's request on or about June 6, 2000. Goode further suggested that Bolden meet with Preckwinkle, who he said was "holding up the project." On June 6 and June 8, 2000, Bolden received a letter and memorandum, respectively, from Goode, stating that it was Norflo's responsibility to ensure its site was removed from the Acquisition List, and including a time line of necessary requirements and procedures to be met before Norflo's application could be sent to the City Council.

On June 12, 2000, Bolden met with Preckwinkle. When Bolden asked Preckwinkle why she objected to Norflo's application, she reminded Bolden that he had on a previous occasion sued the City over a dispute involving low interest rate loan packages provided by HUD and the City. (Comp. ¶ 36.) Preckwinkle also stated it was "my personal policy in my Ward" not to support the disbursement of public funds to private entities, and that she would only lend her support to non-profit entities or to the private entities in joint venture with a private development firm. Preckwinkle further stated that she would not support a "windfall" to Norflo. Bolden then asked Preckwinkle whether there were any conditions under which she would support an application submitted to the Coordinating Council from Bolden to which she responded, "No."

By June 11, 2000, Norflo had met all requirements stated by Goode and made numerous attempts to facilitate removing the subject properties from the Acquisition List, without avail. Goode maintained his position that until the properties were off the Acquisition List, he could not move the application.

5

Beginning on May 31, 2000, Norflo made several requests under the Freedom of Information Act ("FOIA") for information about when and how its properties got on the Acquisition List and what procedures existed for placing properties on and removing them from the List. From responses to the FOIA requests, Norflo learned that the City had not complied with any of the City's prescribed provisions regarding notice and opportunity for hearing with respect to the subject properties being placed on the Acquisition List, and it learned that the procedure for being removed from the list could be found "worded as part of the North Kenwood-Oakland Conservation Plan." Thereupon, on August 1, 2000, Norflo wrote Goode and the DPD, summarizing the interactions among the various parties over the previous sixty days and demanding that the subject properties be removed from the Acquisition List.[5]

On August 9, 2000, Norflo wrote to Hill, Commissioner of the DPD, demanding that the properties be removed by August 15, 2000. However, on August 15, 2000, corporation counsel for the City responded to Norflo's letters, stating that it would be inquiring into the matter. Despite some initial communication between Norflo and corporation counsel, there was no further communication between the parties.

On August 20, 2000, upon recommendation of the Coordinating Council, the City passed ordinances providing for the funding of 35 of the 50 applications recommended by the Coordinating Council, but Norflo was not among them. Among the 35 projects funded, two projects were located principally in the City's Fourth Ward, represented by Alderman

---

[5]Furthermore, Norflo alleges that on August 3, 3000, Bolden attended the Kenwood-Oakland Community Conservation Council so that he could present Norflo's development plans. Norflo had previously taken all necessary steps to appear on the August 3, 2000 agenda; however, Norflo was not on the agenda. At this meeting, Preckwinkle did not permit Bolden to speak and told him that he would have to get permission from the DPD.

Preckwinkle. Both sites were on the City's Acquisition List.

Norflo's application was forwarded to the City Council on December 13, 2000 (after Norflo filed this present action) and subsequently tabled in the Budget Committee of the City Council.[6] Whether the properties remain on the Acquisition List is not of record.

## DISCUSSION

Norflo asserts Counts I through III against the City and the individual City defendants (Carter, Goode and Hill) and Counts I, III and IV against Preckwinkle. Counts I and II, respectively, claim that defendants violated Norflo's right to "substantive due process and equal protection under the laws" by depriving it of a property interest after Norflo complied with all EZ/EC requirements, and by their conduct relating to placement of the properties on the City's Acquisition List. Count I also alleges a First Amendment claim and Count II alleges a procedural due process claim. Count III accuses defendants of conspiracy in violation 42 U.S.C. § 1985 and Count IV seeks punitive damages against Preckwinkle for her breach of public trust in connection with the conspiracy.

## I. The Due Process Claims

Norflo's procedural and substantive due process claims are less than clearly articulated

---

[6]Plaintiff acknowledged in open court that the submission to the City Council did occur but contends that his claim remains viable, relying on *County of Los Angeles* v. *Davis*, 440 U.S. 625, 631 (1979) (As a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.). Defendants argue that these undisputed facts demonstrate that none of the defendants prevented Norflo's application from being submitted to City Council. Defendants further assert that the conduct ascribed to them in the Complaint cannot be construed as a cause of any injury to Norflo but rather Norflo's claim amounts to little more than a complaint that its application took too long – five and a half months – to reach City Council and that such a delay is not unreasonable in the context of the governmental and legislative process. Plaintiff omits from its citation to *Davis* that the Court held that case moot under the rule that a case becomes moot if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Id.* Because this material is outside the pleadings, the court will address the merits of the motions and reserve the issue of mootness, should it be asserted by Preckwinkle, for a Rule 56 motion for summary judgment.

(*see, e.g.,* Compl. ¶¶ 72, 73 which merely refers to the "afore described conduct" of the defendants as depriving it of substantive due process). Nevertheless, it appears that Norflo claims in Count I that once it complied with the terms and conditions necessary for application for the EZ/EC funds (other than removal from the Acquisition List, which was out of Norflo's control) it acquired a protectable, contractual property interest, an interest that "became choate" upon the Coordinating Council recommending it for funding on March 2, 2000 (see Compl. ¶¶ 54, 55), of which it was deprived when the defendants refused to forward the application to the City Council.[7] In Count II, Norflo seems to claim deprivation of procedural and substantive due process (a) because the City has no procedure for removing properties from the Acquisition List, therefore Norflo has no recourse to obtain removal from the List, which deprives Norflo of its "right" to receive EZ/EC funds (Complaint ¶56); and, somewhat inconsistently, (b) because the North Kenwood-Oakland Conservation Plan provides Norflo a right to exemption from the Acquisition List, but the City and Hill have arbitrarily and irrationally refused to grant the exemption; again (presumably, though not explicitly stated) they have deprived Norflo of its right to receive EZ/EC funds (See Compl. ¶¶ 57-58).

In asserting that the City defendants[8] violated Norflo's procedural due process rights due to the placement of the subject properties on the City's Acquisition List, Norflo points to

_____

[7]Norflo argues, as well, that its "property interest . . . is in the nature of a statutory entitlement providing that upon recommendation by the Coordinating Committee, NORFLO's application 'will be submitted through the budget director to the City Council,'" quoting City of Chicago Municipal Code § 2-151-050(j). (Pl.'s Mem. in Support of Pl.'s Resp. to Mot. to Dismiss at p 3.)

[8]According to Preckwinkle, Norflo does not allege that Preckwinkle had anything to do with the inclusion of its property on the City's Acquisition List and that this, in and of itself, is a sufficient basis for the dismissal of Norflo's claims against Preckwinkle, if any, in Count II. Norflo did not contest this assertion in its response. Count II does not include Preckwinkle as a defendant. Therefore, the court assumes that Count II does not concern Preckwinkle.

Municipal Code § 2-151-050, which establishes the powers and duties of the Coordinating Council, for its alleged "right" to have its application submitted to the City Council. (Subsection (j) thereof grants it authority "[t]o receive, review, and make recommendations on all applications for allocations of E.Z./E.C. funds. . . . Recommendations on use of funds will be submitted through the commissioner of planning and development[9] to the city council . . . .") Norflo argues, then, that the placement of the subject properties on the Acquisition List without notice and opportunity to be heard, the lack of any procedure by which property may be removed from the Acquisition List, and the use of the Acquisition List as a pretext for refusing to submit the EZ/EC application to the City Council as required by the Ordinance, violate its procedural due process rights.[10] Defendants argue that plaintiff acquired no protectable property interest in EZ/EC funding, and therefore its substantive due process claims must fail. Further, they argue, Norflo has failed to allege that the City has taken any action to acquire its properties or otherwise harm them, other than to impair its ability to obtain the EZ/EC contract (even that is no longer the case), and they argue that because Norflo has no property interest in an EZ/EC contract, this

---

[9]As indicated, the procedure was amended in May, 2000 to substitute the budget director for the director of DPD, and so Hill of the DPD, not the budget director, is alleged to have violated plaintiff's rights.

[10]Norflo lists the following provision in its Complaint as part of the City's Acquisition Policy:

Unless otherwise recommended and approved by the Commission, this date [by which the acquisition of occupied parcels will commence] should be four years from the date of the publication of the ordinance approving the acquisition. Acquisition shall be deemed to have commenced with the sending of an offer letter. The Commission shall recommend to the City Council that the Plan authorizes acquisition only if it commences within the specified time frame.

(Pl.'s Ex. W).

claim must also fail.[11]

Certainly, because Norflo's application was ultimately submitted to the City Council, Norflo has not demonstrated how it has been deprived of its alleged entitlement under § 2-151-050(j). *See Brown* v. *Brienen*, 722 F.2d 360, 366 (7th Cir. 1983) (the alleged deprivation of property was merely a postponement).[12] But apart from this development, which occurred after the case was filed, it is abundantly clear from case law that approval of an application for funding by a public official or entity where no actual contract has been entered into does not create a substantive property interest. Without a property interest, there is no process due. *See Kyle* v. *Morton High Sch.*, 144 F.3d 448, 452 (7th Cir. 1998) ("It is . . . firmly established that procedural requirements alone cannot be the basis for a property right . . . .").

To establish a due process claim under § 1983, whether procedural or substantive, the plaintiff must first claim a deprivation of a protected interest in life, liberty, or property. *Training Inst., Inc.* v. *City of Chicago*, 937 F. Supp. 743, 747, 748 (N.D. Ill. 1996). As stated in *Kim Construction Co., Inc.* v. *Board of Trustees of Village of Mundelein*,

> To have a constitutionally protected property interest in the award of a municipal contract, an individual must have a "legitimate claim of entitlement to it." A property interest for the purposes of the Due Process Clause is created by

---

[11]The City defendants concede that a different situation might exist if the City decided to initiate procedures for the acquisition or condemnation of Norflo's subject properties, which has not yet happened. (City Defs.' Reply Mem. in Support of Their Mot. to Dismiss at p. 5 n.3.)

[12]Norflo, relying on *Lanna Overseas Shipping, Inc.* v. *City of Chicago*, No. 96 C 3373, 1997 WL 587662 (N.D. Ill. Sept. 18, 1997), states, "[T]he process requiring the submission of a specific application for EZ/EC funds to the City Council for funding is analogous to the issuance of a building permit by a municipality. In each case once all the antecedent requirements have been met, the municipality has no discretion as to whether to submit the application to the City Council in the former instance, or to issue a building permit in the latter situation[.]" (Mem. in Support of Pl.'s Resp. to Mot. of Defs' to Dismiss Pursuant to FRCP 12(b)(6) at p. 5.) Norflo then concludes that "its protectable interest alleged is contractual in nature." To the extent the ordinance at issue is mandatory, it has certainly been accomplished.

> "existing rules or understandings that stem from an independent source such as
> state law – rules or understandings that secure certain support claims of
> entitlement to those benefits."

14 F.3d 1243, 1245 (7th Cir. 1994) (quoting *Board of Regents* v. *Roth*, 408 U.S. 564, 577 (1972)).

Entitlement arises only after benefits have been received or granted. *Cf. Lyng* v. *Payne*, 476 U.S.

926, 942 (1986) ("We have never held that applicants for benefits, as distinct from those already

receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the

Fifth or Fourteenth Amendment.").

There is no language in the section of the Municipal Code on which Norflo relies that

provides that an application, once it is recommended by the Coordinating Council, must be

approved for funding by the City Council (as is also readily inferred from Norflo's allegation that

the City Council approved 35 out of 50 applications recommended by the Coordinating Council).

*See Kim Constr. Co., Inc.*, 14 F.3d at 1246, 1247 ("In the absence of an underlying property

interest, the Due Process Clause does not require states to obey their own procedural rules in

awarding municipal contracts. * * * This court accordingly has held that in Illinois, a

disappointed bidder for a public contract lacks a property interest in the award, even if that bidder

has submitted the lowest conforming bid for the project."). At most, unless and until the City

Council decides to award EZ/EC funds to Norflo, Norflo has not acquired any property interest in

these funds. In fact, Norflo's situation is similar to the plaintiff in *Cunningham* v. *Adams*, 808

F.2d 815, 820-21 (11th Cir. 1987), where the plaintiff was the highest-rated under published

criteria among three bidders whom an evaluation committee recommended to a decision maker

board to receive a contract for an airport concession. The court ruled that the plaintiff had only a

"unilateral expectation" of a property interest. Similarly, in *Circa Ltd.* v. *City of Miami*, 79 F.3d 1057, 1060-61 (11th Cir. 1996), an opinion written by Judge Richard J. Cudahy of the Court of Appeals for the Seventh Circuit sitting in the Eleventh Circuit by designation, the court held that a developer under a Florida community redevelopment act did not acquire property interest in a municipal redevelopment project despite obtaining preliminary approval of its proposal because a contract was not executed with the City.

In its brief, Norflo characterizes its claim as one of "evisceration" of its liberty interest to enter into a contract in that it eliminates Norflo's properties as a recipient of EZ/EC funds, relying on *United States Trust Co. of New York* v. *New Jersey*, 431 U.S. 1, 17 n.14 (1977), to assert that § 2-151-050(j) reflects a legislative intent to establish a contractual right. Even if the court were to bypass the pleadings and accept Norflo's argument that it has been deprived of "liberty" to contract, this adds nothing to the conversation. First, *United States Trust Co. of New York* offers no support to Norflo's claimed right to a procedure leading to the discretionary consideration by the Coordinating Council and City Council of whether the EZ/EC funds would be granted to an applicant. *Cf. Andre* v. *Bd. of Tr. of Vill. of Maywood*, 561 F.2d 48, 51-52 (7th Cir. 1977) ("The contract's rights and obligations in the *United States Trust Co.* case were clear, unequivocal, concrete, and statutorily expressed. Such cannot be claimed here."); *compare Circa, Ltd.*, 79 F.3d at 1061 (the court reserved question whether even an *agreement* (i.e., actual contract) creates a property interest."). Second, a contractual right is in the nature of property. *Cf. United States Trust Co. of New York*, 431 U.S. at 19 n.16 ("contract rights are a form of property . . ."); *see Brown* v. *Brienen*, 722 F.2d 360, 366 (7th Cir. 1983) (rejecting notion that a state actor who breaks a contract deprives the plaintiff of "property" in the substantive due

process sense. "[T]here is nothing in the Bill of Rights about protecting contractual rights as such. Such rights are protected under the due process clause of the Fourteenth Amendment if at all only as a form of property . . ."). Accordingly, Norflo's claim that it has a property or liberty interest in EZ/EC funds on which to base a claim for deprivation of due process, under either the substantive or procedural due process arms, is without merit and these claims will be dismissed.

## II.    The First Amendment Claims

Norflo's First Amendment claim revolves around actions of Preckwinkle, with the assistance of Carter, Goode, and Hill, directed at thwarting Norflo's application because Norflo had openly supported Preckwinkle's opponent in a previous aldermanic election. Norflo believes that the subject properties remain on the Acquisition List because Preckwinkle can use that as a pretext for opposing the application and can ultimately obtain rejection of the application through exercise of the aldermanic "veto." As to this veto, Norflo alleges that the City maintains a custom and practice of permitting aldermen to veto the approval of applications for EZ/EC funds within that alderman's ward and that this veto, also known as "aldermanic privilege," may be exercised for irrational, arbitrary, capricious, political, vindictive and personal reasons, in violation of the First Amendment. Defendants argue that Norflo's claim is deficient because no allegation is made that any of the defendants were ever aware of Norflo's or Bolden's political activities, much less that these defendants took action against Norflo because of such political

activities,[13] citing *Doherty* v. *City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).[14] In addition, the

City argues that Norflo has failed to allege a First Amendment retaliation claim against the City

on the basis of vicarious liability for the conduct of Preckwinkle in exercising an aldermanic veto

against it. The City reasons that even if such conduct occurred, the City could not be held liable

for Preckwinkle's actions. Because Norflo has not alleged that Preckwinkle has exercised her

alleged aldermanic veto, there is no basis to hold the City vicariously liable for Preckwinkle's

actions. Thus, the City will be dismissed from the political retaliation claim and the court will

discuss the claim against the individual defendants.

"The right to petition [the government] is among the most precious of the liberties

guaranteed by the Bill of Rights, and except in the most extreme circumstances citizens cannot

be punished for exercising this right without violating those fundamental principles of liberty and

justice which lie at the base of all civil and political institutions." *McDonald* v. *Smith*, 472 U.S.

479, 486 (1985) (internal citations and quotations omitted) (Brennan, J. concurring); *see Creek* v.

*Vill. of Westhaven*, 80 F.3d 186, 192 (7th Cir. 1996) ("A lawsuit can be a form of constitutionally

protected petition for the redress of grievances.").[15] According to *Thomsen* v. *Romeis*, 198 F.3d

---

[13]Defendants' main challenge goes to the second element, the retaliation. Preckwinkle also challenges Norflo's claim that Norflo engaged in constitutionally protected speech by renting its subject properties to a political opponent of Preckwinkle. It is not necessary to consider whether renting the subject properties in and of itself is protected speech, because plaintiff makes other allegations, which defendants fail to acknowledge, that are clearly protected speech.

[14]In *Doherty*, the Seventh Circuit affirmed the dismissal of a political retaliation claim where plaintiff failed to allege that the decision maker was aware of the plaintiff's political status or that others with favored political status received better treatment under similar circumstances. See *Posr* v. *Court Officer Shield § 207*, 180 F.3d 409, 418 (2d Cir. 1999) (In order to survive a motion to dismiss, the complaint must "allege facts which could reasonably support an inference" that the defendants harbored retaliatory intent).

[15]Preckwinkle asserts that Norflo's First Amendment claim is alleged via its equal protection claim. (Ald. Preckwinkle's Mem. in Support of R. 12(b)(6) Mot. to Dismiss at parts D and E.) In reviewing Count I, however, Norflo alleges its First Amendment claim via its right to substantive due process. (See Compl. ¶ 73.); *cf. Hilton* v.

14

1022, 1027 (7ᵗʰ Cir. 2000),

> In order to establish a § 1983 claim based on the First Amendment, a plaintiff must demonstrate that (1) his conduct was constitutionally protected and (2) his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged action. . . . The plaintiff cannot prevail unless he establishes that the defendant would not have taken the challenged actions "but for" the constitutionally protected conduct.

Norflo alleges that Preckwinkle, when asked why she would not support Norflo's application, stated that Bolden "had on a previous occasion sued the [City] over a contractual dispute involving a low interest rate loan package provided by HUD and the City" (Compl. ¶ 36), that she would support only a not-for-profit venture or a joint for-profit/not-for-profit venture (Compl. ¶ 37), and finally that she would not support an application by Bolden under any conditions (Compl. ¶ 40). Norflo pleads only that the individual City defendants acted against Norflo at Preckwinkle's insistence.

Although it is true that mere allegations that Norflo rented the subject properties to a political opponent of Preckwinkle and that Norflo's president's support of this political opponent was "open and notorious" would not permit an inference that Preckwinkle knew of Bolden's opposition, nevertheless, these facts added to the allegations set out in the preceding paragraph would permit an inference that Preckwinkle was retaliating against Norflo by thwarting the progress of the application because of Bolden's protected activity. In other words, it cannot be said that it is clear that plaintiff can prove no set of facts entitling it to relief. There are no allegations, however, that would permit the court to infer that Carter, Goode, and Hill knew of

---

*City of Wheeling*, 209 F.3d 1005, 1006 (7ᵗʰ Cir. 2000), *cert. denied*, 531 U.S. 1080 (2001) ("the right to petition the government for grievances is found in the First Amendment to the Constitution has been held enforceable against states by virtue of the due process clause of the Fourteenth Amendment.").

Bolden's opposition to Preckwinkle or otherwise possessed knowledge from which retaliatory intent towards Norflo could be inferred. At most, they were complying with Preckwinkle's wishes. Therefore, Norflo's First Amendment retaliation claim is viable against Preckwinkle, but not against the City, Carter, Goode or Hill.

## III. The Equal Protection Claims

In Count I, plaintiff alleges that the defendants denied Norflo equal protection of the laws in that Norflo's application was the only application recommended but, for impermissible discriminatory reasons (Preckwinkle's animosity), not forwarded to the City Council. In Count II, Norflo alleges that the City, Carter and Goode denied Norflo equal protection when it forwarded the applications of two other entities whose properties were on the Acquisition List, while not forwarding Norflo's application on the basis that the properties were on the Acquisition List. Defendants argue that plaintiff fails to state a claim for denial of equal protection because a plaintiff, who is a class of one, such as Norflo, must allege not only differential treatment when compared to others similarly situated but also that there was an illegitimate *animus* towards the plaintiff which caused the differential treatment, citing *Village of Willowbrook* v. *Olech*, 528 U.S. 562 (2000); *Hilton* v. *City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000), and Norflo has failed to make such allegations. Preckwinkle argues, in addition, that Norflo fails to allege different treatment because it does not identify any similar projects for which EZ/EC funding was sought or indicate that Preckwinkle applied a different standard with respect to such projects. Moreover, Preckwinkle relies on her professed bases for her opposition to Norflo's funding request as on

their face non-discriminatory.[16]

In the classic equal protection format, the plaintiff must allege (1) membership in a protected class, (2) that is otherwise similarly situated to those not in the class, but (3) is treated differently on the basis of that class. *Lanna Overseas Shipping, Inc.* v. *City of Chicago*, No. 96 C 3373, 1997 WL 587662, at *8 (N.D. Ill. Sept. 18, 1997), (citing to *New Burnham Prairie Homes, Inc.* v. *Vill. of New Burnham*, 910 F.2d 1474, 1481-82 (7th Cir. 1990)). But as the City defendants point out, where a class of one is alleged, *Village of Willowbrook*[17] governs. A plaintiff who is a class of one must allege not only differential treatment when compared to others similarly situated, but also that there was an illegitimate animus toward the plaintiff which caused the differential treatment, or as stated in *Village of Willowbrook*, 209 F.3d at 1008, that the defendant acted "for reasons of a personal nature unrelated to the duties of the defendant's position."

In Count I, plaintiff compares itself to all other recommended applicants and in Count II

---

[16]Preckwinkle further argues that Norflo neglects to mention its admission that Bonheur Development, Inc., a campaign contributor, was in a joint venture with a non-profit corporation, which satisfied Preckwinkle's stated requirement for non-profit corporation participation.

[17]Defendants assert that Norflo alleges that it is a class of one under Count I and Norflo concedes it is alleging that it is a class of one in its response (see Mem. in Support of Pl.'s Resp. at p. 8). In reviewing Count I, it is unclear to the court whether Norflo alleges it is a class of one because Preckwinkle also allegedly retaliated against another recommended applicant, KOCO, whose Executive Director, Robert L. Lucas, was a former political opponent and a "sort of sworn political enemy." (Compl. ¶¶ 63-65.) According to Norflo's allegations, however, Preckwinkle exercised the aldermanic veto against KOCO during City Council proceedings. If this be the case, the distinction between the classes is still political speech, and the outcome of this aspect of the motion remains the same. Because Norflo fails to allege that Preckwinkle has exercised the aldermanic veto against it, it appears that not only is Norflo still a class of one. As an aside, it is unclear whether Norflo has standing to assert its contentions about the aldermanic veto or that such contentions are ripe, *See Heartwood, Inc.* v. *United States Forest Service et al.*, 230 F.3d 947 (7th Cir. 2000).

(against the City defendants only[18]) to two other entities on the Acquisition List (Little Black Pearl, Inc., and Muntu Dance Company) (see Compl. ¶ 59) who were recommended in spite of that status. With respect to either construct, the City defendants are correct that the Complaint does not allege any personal animus by Carter or Goode that would permit Norflo to assert an equal protection claim against them or the City as a class of one. As stated above, the most that can be inferred from the allegations of the Complaint is that Carter and Goode were doing the bidding of Preckwinkle, but this does not mean that they harbored personal animosity against Norflo or Bolden.

With respect to Preckwinkle's argument that plaintiff fails to identify others similarly situated and how they were treated more favorably, perhaps it could be said that Norflo alleges that Hearts United, Inc. was treated more favorably both because its properties were on the Acquisition List but still were forwarded to the City Council, and because Hearts United, Inc. did not fully comply with other requirements of applicants.[19] Nevertheless, it is obvious that Norflo's attempts to plead that Preckwinkle had an illegitimate animus towards it based on Bolden's political advocacy is the same thing as saying that defendants retaliated against Norflo in retaliation for Bolden's exercise of speech and, as such, the equal protection claim collapses

---

[18]As stated earlier, Norflo does not allege any claims under Count II against Preckwinkle. Furthermore, Norflo specifically excludes Hill from its equal protection claim under Count II (see Compl. ¶ 59); therefore, Hill is not included as a defendant in this instance.

[19]Defendants fail to acknowledge that the Strategic Ad Hoc Committee shifted funding for Norflo to Hearts United, Inc., a non-profit, working in conjunction with a campaign contributor of Preckwinkle, even though Hearts United, Inc. did not receive a passing score from the Coordinating Council. Moreover, as mentioned earlier, Preckwinkle, when asked by Bolden, said that she would not support an application of Bolden's, which leads to the inference, at least under Rule 8, that she would not support an application by Bolden even if it was made in conjunction with a non-profit.

into the First Amendment claim.[20]  Accordingly, the equal protection claims under Count I and

Count II will be dismissed against all defendants.

## IV.    The Conspiracy Claims

Norflo contends that the conduct of Preckwinkle and the other defendants constitutes a

conspiracy to deprive Norflo of its constitutional rights which may be vindicated under 42 U.S.C.

§ 1985(3) based on Borden's loyalty to Preckwinkle's political opponent.  Defendants argue that

section 1985 does not apply to claims brought under the First Amendment, citing to *Herhold* v.

*City of Chicago*, 723 F. Supp. 20, 36 (N.D. Ill. 1989) ("viewing Seventh Circuit case law as a

whole, it appears fairly clear that section 1985(3) does not extend to politically motivated

conspiracies . . ."), and *Feng* v. *Sandrik*, 636 F. Supp. 77, 84 n. 7 (N.D. Ill. 1986) ("the scope of

substantive rights protected through section 1985(3) actions does not include those contained in

the First Amendment.").  According to defendants, Norflo's section 1985 claim fails because,

while Norflo alleges that defendants have conspired to retaliate against it for the political

association of its president with Preckwinkle's political opponent, this claim is based on the First

Amendment, which is inapplicable to § 1985(3).  Norflo responds that the court in *United Bhd. of*

*Carpenters and Joiners of Am., Local 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 837 (1983), left

open the possibility that section 1985 may apply to conspiracies based on "otherwise class based

animus" and that it be allowed to assert a claim based on a conspiracy directed against a "class of

one."

---

[20]It is apparent from the briefs that Norflo means that Preckwinkle's preference for a not-for-profit
component is merely a pretext for her retaliatory motive, which amounts to a First Amendment claim.  Norflo
nowhere argues that Preckwinkle's preference for a not-for-profit component is simply not rationally related to a
legitimate governmental interest, a type of equal protection claim not applicable to a class of one situation.

Plaintiff's conspiracy claim must be dismissed for at least two reasons. First, neither the Supreme Court or the Seventh Circuit has ever held that nonracial conspiracies motivated by political loyalty are within the protection of section 1985(3). *See Scott*, 463 U.S. at 837 ("*Even if* the section must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, or at any of the classes posited by Senator Edmunds, we find no convincing support in the legislative history for the proposition that the provision was intended to reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities.") (emphasis added); *Grimes* v. *Smith,* 776 F.2d 1359, 1363-67 (7th Cir.1985) (Section 1985(3) does not cover alleged victims of nonracial political conspiracies); *Bowman* v. *City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992) ("*Even if* the defendants' actions against the Bowmans could somehow be viewed as political, '§ 1985(3) does not reach nonracial political conspiracies,'" quoting *Grimes*) (emphasis added).[21]

Second, defendants are correct that even if Norflo alleges a § 1985(3) claim based on Bolden's political loyalty, Norflo still fails to state a claim because the intracorporate conspiracy doctrine provides that a municipality cannot conspire with its own officials or employees. *Payton* v. *Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632-33 (7th Cir. 1999); *Zoch* v. *City of Chicago*, No. 94 C 4788, 1997 WL 89231, at *56 (N.D. Ill. Feb. 4, 1997) ("the intracorporate conspiracy doctrine bars recovery under § 1985 where a plaintiff does not claim

---

[21]Some of the cases – even this court's own *Talley* v. *City of Chicago*, No. 00 C 1240, 2001 WL 115924, at *5 (N.D. Ill. Sept. 28, 2001) – recite that a conspiracy to discriminate based on political loyalty falls within § 1985(3). *See, e.g., Volk* v. *Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988); *Munson* v. *Friske,* 754 F.2d 683, 695 (7th Cir.1985), *Murphy* v. *Mount Carmel High Sch.,* 543 F.2d 1189, 1192 n. 1 (7th Cir.1976); *Life Ins. Co. of North Am.* v. *Reichardt,* 591 F.2d 499, 505 (9th Cir.1979); and *Marlowe* v. *Fisher Body,* 489 F.2d 1057, 1064-65 (6th Cir.1973). In *Volk* and the other cited cases, however, this language is dictum. *But see Cameron* v. *Brock,* 473 F.2d 608, 610 (6th Cir. 1973) ("We hold that § 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate.").

that the conspiracy was part of some broader discriminatory pattern . . . or that it in any way permeated the ranks of the organization's employees.") (internal quotation omitted). Courts have applied this doctrine to municipal employees holding, for example, that individual aldermen could not conspire with members of the executive branch because they are "members of the same municipal corporation, *i.e.,* the City of Chicago." *Allen*, 828 F. Supp. at 564. Here, as Hill, Goode and Carter are alleged to be agents of the City[22] and Preckwinkle is an alderman, they are all members of the same municipal corporation, the City, and, therefore, form an intracorporate conspiracy. As such, the court concludes that Norflo's § 1985(3) claim is barred by the intracorporate conspiracy doctrine. As such, Count III must be dismissed.

## V. Punitive Damages

In Count IV, Norflo alleges that Preckwinkle's conduct, incorporated by reference to all factual allegations of the Complaint, is "so egregious, reprehensible, constitutionally illiterate, particularly on the part of an elected official, a fiduciary of the public trust and held to the highest standard of conduct, as to constitute a breach of [public] trust, and is deserving of the imposition of punitive damages to serve as an example" (Compl. ¶ 76) to deter future unconstitutional violations by Preckwinkle and other elected or appointed City officials. To the extent punitive damages are available under the one surviving claim against Preckwinkle, punitive damages may be awarded should the proof be met. Plaintiff has not identified a cause of action under the Civil Rights Act or Illinois law, however, for breach of public trust. Therefore, Count IV must be dismissed.

---

[22]Norflo alleges that Carter and Goode are "agents" of the City and there is no allegation that they are not also employees of the City, so that fact is assumed.

## VI. Legislative Immunity Issues

Preckwinkle contends that she is entitled to absolute immunity from each of Norflo's claims against her because she was exercising her legislative responsibilities as alderman. Norflo argues that the doctrine of legislative immunity does not apply to this case because Preckwinkle's conduct was not of a legislative nature. For example, when Preckwinkle attended the Strategic Planning Ad Hoc Committee of the Coordinating Council on April 13, 2000, Norflo contends, Preckwinkle was not acting in a legislative capacity; similarly, preventing Norflo from being on the agenda at the local community meeting (see discussion *supra* note 5) was not a legislative activity.

Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities. *Bogan* v. *Scott-Harris*, 523 U.S. 44, 54 (1998).

> Absolute immunity, however, only applies to those legislators acting in their legislative capacity. Administrative or executive acts of legislators are not protected. This "functional" approach focuses on the nature of the duties with which a particular government official has been lawfully entrusted, [and evaluates] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. The government official seeking immunity, therefore, has the burden of showing that an exemption from personal liability is justified by overriding considerations of public policy, or by a tradition of common law practice existing at the time of the enactment of section 1983.

*Rateree* v. *Rockett*, 852 F.2d 946, 950 (7th Cir. 1988) (internal citations and quotations omitted).

Preckwinkle cites *Bogan*, 523 U.S. at 45 (Mayor's introduction of a budget that proposed the elimination of city jobs and his signing the ordinance into law also were legislative activities, even though he was an executive official), *Rateree*, 852 F.2d at 950 (actions of city commissioners in approving budget decision to eliminate jobs were legislative, not

administrative, actions entitling them to absolute immunity), and *Lanna Overseas Shipping, Inc.*, 1997 WL 587662, at *23 (alderman entitled to absolute immunity for introducing ordinance revoking plaintiff's driveway permit).

The policy underlying immunity was elegantly explained by Justice Frankfurter in *Tenney v. Brandhove*, 341 U.S. 367, 373 (1951):

> The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. 'In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.' II Works of James Wilson (Andrews ed. 1896) 38.

Although, without a doubt, any vote by Preckwinkle in opposition to the application once it arrived at the City Council would be within her legislative function, the conduct at issue here is not clearly so in that Preckwinkle allegedly asserted herself into the administrative function committed to the Coordinating Council by blocking the Council from passing on Norflo's application in order to prevent it coming before the Council. (*See also* Compl. ¶¶ 36, 44, 58.) Preckwinkle has the burden here of demonstrating her entitlement to immunity and, at least for the purpose of the motion to dismiss, the court cannot conclude that there are clearly no set of facts that could establish that Preckwinkle acted outside her legislative function. Therefore, Preckwinkle has not established that she is immune from liability under section 1983.

## ORDER

Accordingly, the court grants the motion to dismiss of the City, Hill, Goode and Carter [#11] in its entirety. The motion of Preckwinkle to dismiss [#10] is granted with respect to the due process claim of Count I, the equal protection claims of Counts I and II, the conspiracy claim of Count III, and the claim for breach of public trust in Count IV. The motion of Preckwinkle is denied with respect to the Count I claim for violation of the First Amendment. Defendant Preckwinkle is directed to answer the Complaint by April 22, 2002. A status hearing will be held on April 29, 2002 at 9:30 a.m.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 25, 2002