F I L E D

APR 0 3 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

APR 1 2 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NORFLO HOLDING CORPORATION, )
INC., )
)
Plaintiff, )
)
v. ) No. 00 C 6208
)
CITY OF CHICAGO, *et al.*, ) Hon. Joan Humphrey Lefkow
)
Defendants. )

## NOTICE OF MOTION

TO:  Arnim Johnson, Jr.　　　　　　　　Michael J. Dolesh
　　　7312 S. Cottage Grove Av.　　　　Assistant Corporation Counsel
　　　Chicago, Illinois 60619　　　　　Commercial & Policy Litigation Division
　　　　　　　　　　　　　　　　　　　　30 N. LaSalle Street, Suite 900
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602

PLEASE TAKE NOTICE that on April 11, 2002 at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Joan Humphrey Lefkow or any judge sitting in her stead in the courtroom usually occupied by her in Room 1925 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and move to alter or amend this Court's Memorandum Opinion and Order dated March 25, 2002, or for the reconsideration of such order, and for other relief.

Of Counsel:

Riordan, Dashiell & Donnelly, Ltd.
10 N. Dearborn, 4th Floor
Chicago, Illinois 60602
(312) 663-9400

MARC S. LIPINSKI

Counsel for Ald. Toni Preckwinkle

## CERTIFICATE OF SERVICE

The undersigned, under penalty of perjury, states that on April 3, 2002, she caused copies of this Notice, the Motion described therein and a Memorandum in support of the Motion to be served on the parties to whom this Notice is directed, at their respective addresses, by depositing the same in the U.S. mail at Chicago, Illinois, with proper postage prepaid.

2

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION APR 0 3 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| NORFLO HOLDING CORPORATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 6208 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Hon. Joan Humphrey Lefkow |
| | ) | |
| Defendants. | ) | |

DOCKETED

APR 1 2 2002

## MOTION TO ALTER OR AMEND JUDGMENT

Defendant Alderman Toni Preckwinkle ("Ald. Preckwinkle"), by Marc S. Lipinski, her

attorney, with Riordan, Dashiell & Donnelly, Ltd. of counsel, pursuant to *Fed.R.Civ.P.* 59,[1]

moves to alter or amend this Court's Memorandum Opinion and Order dated March 25, 2002

(hereinafter, the "Judgment") and for other relief, and in support, states:

1.      Under the terms of the Judgment, the claim of Norflo Holding Corporation, Inc.

("Norflo") against Ald. Preckwinkle under 42 U.S.C. Sec. 1983, premised on an alleged

violation of Norflo's First Amendment rights, remains pending.

2.      In her motion to dismiss, which was decided under the terms of the Judgment,

Ald. Preckwinkle challenged Norflo's First Amendment claims, based on, among other things,

the doctrine of legislative immunity.

3.      In the Judgment, the Court ruled that the conduct at issue is not clearly within the

scope of the doctrine of legislative immunity, in that "Preckwinkle allegedly asserted herself into

---

[1]     This motion is brought pursuant to Rule 59, because the Court's disposition of the legislative
immunity claim asserted in Ald. Preckwinkle's motion to dismiss is appealable. *Behrens v.
Pelletier*, 516 U.S. 299, 305-308, 116 S. Ct. 834, 838-840 (1996), *Mitchell v. Forsyth*, 472 U.S.
511, 524-530, 105 S. Ct. 2806, 2814-2817 (1985). See also, *May v. Sheahan*, 226 F. 3d 876, 879,
*et seq.* (7th Cir. 2000). Alternatively, if the Court determines that Rule 59 does not apply, Ald.
Preckwinkle submits that this motion should be treated as seeking reconsideration.

2C

the administrative function committed to the Coordinating Council by blocking the Council from passing on Norflo's application in order to prevent it from coming before the [City] Council." (Judgment at 23)

4. Ald. Preckwinkle respectfully submits that in ruling on this issue, the Court misapprehended the allegations of the complaint, and that the Court's interpretation of the scope of the doctrine of legislative immunity was unduly narrow.

5. As is stated more fully in her memorandum submitted herewith, Ald. Preckwinkle respectfully submits that this Court should grant the subject motion to alter or amend the Judgment, and dismiss Norflo's remaining First Amendment claim.

6. Also, under the terms of the Judgment, Ald. Preckwinkle is required to file her answer by April 22, 2002. However, depending on the Court's decision on the merits of this motion, an answer may be unnecessary. Accordingly, Ald. Preckwinkle requests that the answer deadline be vacated, and that all proceedings herein be stayed, pending the disposition of the merits of this motion.

MARC S. LIPINSKI

Counsel for Ald. Toni Preckwinkle

Of Counsel:

Riordan, Dashiell & Donnelly, Ltd.
10 N. Dearborn, 4th Floor
Chicago, Illinois 60602
(312) 663-9400

2

JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NORFLO HOLDING CORPORATION, )
INC., )
)
)
Plaintiff, )
)
v. )    No. 00 C 6208
)
CITY OF CHICAGO, *et al.*, )    Hon. Joan Humphrey Lefkow
)
Defendants. )

FILED

APR 0 3 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

APR 1 2 2002

## MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT

Defendant Alderman Toni Preckwinkle ("Ald. Preckwinkle"), by Marc S. Lipinski, her attorney, with Riordan, Dashiell & Donnelly, Ltd. of counsel, submits the following memorandum in support of her motion to alter or amend this Court's Memorandum Opinion and Order dated March 25, 2002 (hereinafter, the "Judgment") and for other relief.

**Introduction**

Under the terms of the Judgment, the claim of Norflo Holding Corporation, Inc. ("Norflo") against Ald. Preckwinkle under 42 U.S.C. Sec. 1983, premised on an alleged violation of Norflo's First Amendment rights, remains pending.[1] In her motion to dismiss, which was decided under the terms of the Judgment, Ald. Preckwinkle challenged Norflo's First Amendment claim, based on, among other things, the doctrine of legislative immunity.

In the Judgment, the Court ruled that the conduct at issue is not clearly within the scope of the doctrine of legislative immunity, in that "[a]lthough, without a doubt, any vote by Preckwinkle in opposition to the application once it arrived at the City Council would be within

---

[1] Ald. Preckwinkle notes that the Judgment resolved a thicket of issues raised by Norflo's complaint and addressed under the terms of the defendants' motions to dismiss. It is respectfully submitted that the entry of the Judgment allows the remaining parties, and the Court, to focus more sharply on those few issues which remain pending.

her legislative function, the conduct at issue here is not clearly so in that Preckwinkle allegedly asserted herself into the administrative function committed to the Coordinating Council by blocking the Council from passing on Norflo's application in order to prevent it [from] coming before the [City] Council." (Judgment at 23)  In reaching this determination, it is respectfully submitted that the Court misapprehended the allegations of the complaint, and that the Court's interpretation of the scope of the doctrine of legislative immunity was unduly narrow.

## I.  NORFLO'S CLAIM

In the Judgment, the Court stated that "Preckwinkle allegedly asserted herself into the administrative function committed to the Coordinating Council by blocking the Council from passing on Norflo's application in order to prevent it [from] coming before the [City] Council." (Judgment at 23)  However, Norflo alleges that its application for an Empowerment Zone/Empowerment Communities ("EZ/EC") grant *was approved* by the Coordinating Council. (Complaint, par. 24)  Furthermore, Norflo alleges that the Coordinating Council's recommendation of Norflo's application *was never withdrawn*. (Complaint, par. 61)  Norflo's claim relates to the alleged "refusal" to "forward Norflo's recommended application to the City Council." (Complaint, par. 62)  As Norflo acknowledges, applications are "forwarded" to the City Council *in the form of ordinances*. (Complaint, par. 51)[2]

Accordingly, the issue presented by Norflo is not whether Ald. Preckwinkle blocked the Coordinating Council's consideration of Norflo's application. As Norflo acknowledges, *the Coordinating Council never altered its original recommendation*. Instead, Norflo's claim is that

---

[2]     As the Seventh Circuit has observed, a party can plead itself out of court by unnecessarily alleging facts which demonstrate that it has no legal claim. *Northern Trust Co. v. Peters*, 69 F. 3d 123, 129 (7th Cir. 1995).

Ald. Preckwinkle acted improperly *by blocking the submission of an ordinance* to the City

Council for the approval of Norflo's application.

## II. THE DOCTRINE OF LEGISLATIVE IMMUNITY PROTECTS THE LEGISLATIVE DRAFTING PROCESS AS WELL AS THE INTRODUCTION OF LEGISLATION

In the Judgment, the Court states that "without a doubt, any vote by Preckwinkle in

opposition to the application once it arrived at the City Council would be within her legislative

function" (Judgment at 23), suggesting that the scope of the doctrine of legislative immunity

does not extend beyond (or appreciably beyond) a legislator's casting of a formal vote as a

member of a legislative body. In fact, the doctrine of legislative immunity protects a

significantly greater scope of activity.

As a member of the Chicago City Council, Ald. Preckwinkle is a local legislator entitled

to absolute immunity for her legislative activities. Local legislators are absolutely immune from

suit under Section 1983 for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54,

118 S. Ct. 966, 972 (1998), *Rateree v. Rockett*, 852 F. 2d 946 (7th Cir. 1988), *Lanna Overseas*

*Shipping, Inc. v. City of Chicago*, 1997 WL 587662, pp. 23-24 (N.D. Ill. 1997). The rationale

for this rule is that:

> Regardless of the level of government, the exercise of legislative
> discretion should not be inhibited by judicial interference or
> distorted by fear of personal liability. See *Spallone v. United*
> *States*, 493 U.S. 265, 279, 110 S. Ct. 625, 634, 107 L.Ed.2d 644
> (1990) (noting, in the context of addressing local legislative action,
> that "any restriction on a legislator's freedom undermines the
> 'public good' by interfering with the rights of the people to
> representation in the democratic process"); see also *Kilbourn v.*
> *Thompson*, 103 U.S. [168], at 201-204 (federal legislators); *Tenney*
> [*v. Brandhove*, 341 U.S. 367] at 377, 71 S. Ct. [783] at 788-789
> (state legislators); *Lake Country Estates*, [ *Inc. v. Tahoe Regional*
> *Planning Agency*], 440 U.S. [391] at 405, 99 S. Ct. [1171] at 1179
> (regional legislators)... And, the threat of liability may

significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S. Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).

*Bogan v. Scott-Harris*, 523 U.S. at 52, 118 S. Ct. at 971-972.[3]

As the Supreme Court has stated,

> Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity."

*Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 972 (1998), *citing, Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S. Ct. 783, 788 (1951). Accordingly, to determine the extent of legislative

immunity, it is necessary to determine the extent of the "sphere of legitimate legislative

---

[3] A passage from *Spallone v. United States*, which was cited in *Bogan*, provides a more explicit description of these policy concerns, in connection with the review of a district court's order which held individual legislators in contempt and liable for monetary sanctions:

> The imposition of sanctions on individual legislators is designed to cause them to vote, not with a view to the interest of their constituents or of the city, but with a view solely to their own personal interests. Even though an individual legislator took the extreme position - or felt that his constituents took the extreme position - that even a huge fine against the city was preferable to enacting the Affordable Housing Ordinance, monetary sanctions against him individually would motivate him to vote to enact the ordinance simply because he did not want to be out of pocket financially. Such fines thus encourage legislators, in effect, to declare that they favor an ordinance not in order to avoid bankrupting the city for which they legislate, but in order to avoid bankrupting themselves.

> *Spallone v. United States*, 493 U.S. 265, 279-280, 110 S. Ct. 625, 634 (1990)(Court of Appeals order affirming District Court's assessment of monetary sanctions against individual legislators reversed). The passage from *Tenney v. Brandhove*, cited in the above-quoted passage from *Bogan*, also provides illumination on this issue:

> Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

> *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S. Ct. 783, 788 (1951).

activity."[4] In doing so, the following admonition from the Supreme Court should be kept in mind:

> Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. The privilege of absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Tenney* [*v. Brandhove*], 341 U.S. at 377, 71 S. Ct. at 788 (internal quotation marks deleted). Furthermore, it simply is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Ibid.* We therefore held that the defendant in *Tenney* had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order "to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights." *Id.* at 371, 71 S. Ct. at 785 (internal quotation marks omitted).

*Bogan v. Scott-Harris*, 523 U.S. at 54-55, 118 S. Ct. at 973 (1998).

Under *Bogan*, the "sphere of legitimate legislative activity" includes the drafting and introduction of legislation, voting on legislation and the signing into law of legislation. The plaintiff in *Bogan* alleged that the mayor prepared and introduced a budget which eliminated the plaintiff's position, based on racial animus and a desire to retaliate against the plaintiff for exercising her First Amendment rights. 523 U.S. at 47, 118 S. Ct. at 969. The plaintiff also alleged that city council members, including the chairman of a city council committee, approved the mayor's budget ordinance, based on the same motivation. *Id.* A jury verdict was rendered in

---

[4] The Supreme Court has acknowledged that the legislative process, for purposes of the doctrine of legislative immunity, is not limited to the introduction of legislation, floor debate and voting, and extends, for example, to the operations of legislative committees. *Tenney v. Brandhove*, 341 U.S. 367, 71 S. Ct. 783 (1951). It is respectfully submitted that the actions of the Coordinating Council, in considering grant applications and making recommendations in connection therewith, was analogous to that of a legislative committee, because the actions of the Coordinating Council were part of a process that was established for the express purpose of guiding the drafting of ordinances for City Council consideration.

favor of the plaintiff on her Section 1983 claims against the mayor and the city council committee chairman, and affirmed by the Court of Appeals. 523 U.S. at 47-48, 118 S. Ct. at 969-970. The Supreme Court, however, reversed the Court of Appeals, holding that both the mayor and the city council committee chairman were protected by legislative immunity. 523 U.S. at 55, 118 S. Ct. at 973. In connection with the mayor's legislative immunity defense, the Supreme Court stated:

> [Mayor] Bogan's actions were legislative because they were integral steps in the legislative process. Cf. *Edwards v. United States*, 286 U.S. 482, 490, 52 S. Ct. 627, 630, 76 L.Ed. 1239 (1932)(noting the "legislative character of the President's function in approving or disapproving bills"); *Smiley v. Holm*, 285 U.S. 355, 372-373, 52 S. Ct. 397, 401-402, 76 L.Ed. 795 (1932) (recognizing that a governor's signing or vetoing of a bill constitutes part of the legislative process).

*Id.*

The concept that legislative activity includes the drafting and introduction of legislation is supported by *Rateree v. Rockett*, 852 F. 2d 946 (7th Cir. 1988)(legislative immunity defense sustained with respect to claims arising from passage of budget ordinances which did not include line items for plaintiffs' positions, which had been established under a prior ordinance) and *Lanna Overseas Shipping, Inc. v. City of Chicago*, 1997 WL 587662, pp. 23-24 (N.D. Ill. 1997)(Chicago alderman's legislative immunity defense sustained with respect to claim arising from alderman's introduction of ordinances rezoning plaintiff's property and revoking plaintiff's driveway permit). Put simply, the ordinances in *Rateree* and *Lanna* could not have been passed if they had not been introduced, and could not have been introduced if they had not been drafted. Accordingly, these actions were "integral steps in the legislative process", as described in *Bogan*.

Of necessity, the choice to exclude something from proposed legislation is a drafting decision which is inseparable from the rest of the legislative process. This is plain on the face of both *Bogan* and *Rateree,* because legislative immunity was sustained in both cases notwithstanding the plaintiffs' claims that the ordinances at issue therein excluded provisions for the plaintiffs' respective positions.

Of necessity, the choice to exclude something from proposed legislation must encompass the choice to simply not draft or introduce any legislation at all. It is respectfully submitted that the plaintiffs in *Bogan* and *Rateree* would not have had better claims for relief if they had made the semantic choice of couching their claims in terms of an alleged refusal by the defendants to draft and introduce separate, stand-alone, ordinances authorizing their respective positions.[5]

A plaintiff cannot evade the legislative immunity doctrine by treating the legislative drafting process, including any alleged failure or refusal to draft legislation, as being somehow divorced from the rest of the "sphere of legitimate legislative activity." Any contrary interpretation of the doctrine of legislative immunity would eviscerate the protections of this doctrine, because authors of complained of legislation, anyone who participated in the drafting process by making comments or suggestions to the authors, anyone who failed or refused to draft or introduce legislation, and anyone who participated in any in any process resulting in a decision to not draft or introduce legislation, "could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against

---

[5]  Stated in the terms adopted by Norflo, the mayor and the city council committee chairman in *Bogan,* and the city council members in *Rateree,* failed or refused to draft and introduce ordinances which maintained the positions of the plaintiffs in those cases. There is no logical distinction between a failure or refusal to include a provision in an ordinance and a failure or refusal to draft and introduce an ordinance stating the same purportedly omitted provision on a stand-alone basis.

them based upon a jury's speculation as to motives", and place the court in the inappropriate

position of "inquir[ing] into the motives of legislators," in contravention of *Bogan*. 523 U.S. at

54, 118 S. Ct. at 973.

### III. NORFLO'S CLAIM AGAINST ALD. PRECKWINKLE ARISES FROM THE LEGISLATIVE DRAFTING PROCESS

Ald. Preckwinkle respectfully submits that any alleged action on her part to prevent the

submission of an ordinance to the City Council for the approval of Norflo's application cannot

be separated from her legislative function. As the Supreme Court has stated, "whether an act is

legislative *turns on the nature of the act*, rather than on the motive or intent of the official

performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 973 (1998)(emphasis

supplied).

Insofar as the preparation and submission of ordinances is a legislative function, any

participation in such activity, on the part of Ald. Preckwinkle, also must be treated as legislative

activity. While the executive branch was entrusted with the task of preparing and submitting

ordinances for the approval of EZ/EC grant applications for the City Council's consideration,[6]

the work of preparing and submitting ordinances is nevertheless, by its very nature, a legislative

function. The Supreme Court has expressly acknowledged that the executive branch in some

circumstances performs legislative functions, by participating in the law-making process. *Bogan*

*v. Scott-Harris*, 523 U.S. 44, 55, 118 S. Ct. 966, 973 (1998)(mayor protected by legislative

immunity in connection with the preparation and introduction of budget). See also, *Immigration*

*and Naturalization Service v. Chadha*, 462 U.S. 919, 945-951, 103 S. Ct. 2764, 2781-2784

---

[6]      Under the terms of the ordinance on which Norflo relies, the EZ/EC grant application process culminates with the submission, to the City Council, of an ordinance for the authorization of the grant. *Chicago Mun. Code*, Sec. 2-1541-050(j).

(1983)(discussing the legislative process, including "the President's veto role in the legislative process"), *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S. Ct. 612, 683 (1976)(noting that "the President is a participant in the law-making process by virtue of his authority to veto bills enacted by Congress"), *Smiley v. Holm*, 285 U.S. 355, 369, 52 S. Ct. 397, 400 (1932)(governor's veto part of legislative process).

In the Judgment, the Court suggests that the drafting and introduction of an ordinance for the approval of Norflo's EZ/EC grant application was an "administrative function." (Judgment at 23)  However, the foregoing cases reflect that whether an act is legislative *depends on the nature of the act* and not on the executive or legislative status of the individual performing the act.

Also, it should be noted that Norflo's claim rests on its allegation that Ald. Preckwinkle participated in or controlled the legislative decision to draft and introduce such an ordinance. Indeed, Norflo's claim is that Ald. Preckwinkle exercised a "de facto veto" known as "aldermanic privilege" in connection with this decision. (Complaint, par. 62)  The bottom line is that Ald. Preckwinkle participated in this decision, or she didn't.  If she participated in this decision, she is protected by legislative immunity, because the decision was an integral part of the legislative process.  If she did not participate in this decision, or her participation had no impact, then Norflo has no claim against her, because under such circumstances, persons other than Ald. Preckwinkle were entirely responsible for this legislative decision.

In the Judgment, there is a suggestion that Ald. Preckwinkle's motives may be considered in connection with the issue of legislative immunity. (Judgment at 23, citing

9

Complaint at par. 36, 44 and 58)[7] However, under *Bogan*, this is clearly impermissible. *Bogan v. Scott-Harris*, 523 U.S. at 54-55, 118 S. Ct. at 973.

**Conclusion**

Norflo's claim strikes at the heart of the democratic process, because it seeks to hold a member of a legislative body responsible, for money damages, based on her alleged participation in legislative activity. As was stated in *Bogan*, "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Bogan v. Scott-Harris*, 523 U.S. 44, 52, 118 S. Ct. 966, 971 (1998), *citing, Spallone v. United States*, 493 U.S. 265, 279, 110 S. Ct. 625, 634 (1990).

It is inimical to the public interest to allow a private party to pursue a cause of action for money damages against a member of a legislative body, based on that member's opposition to the drafting and introduction of legislation. "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S. Ct. 783, 788 (1951).

Ald. Preckwinkle's motion to alter or amend the Judgment should be granted, and Norflo's remaining claim against her should be dismissed.

Of Counsel:                                          MARC S. LIPINSKI

Riordan, Dashiell & Donnelly, Ltd.
10 N. Dearborn, 4th Floor
Chicago, Illinois 60602                              Counsel for Ald. Toni Preckwinkle
(312) 663-9400

---

[7]    A similar suggestion is found in the Judgment, at page 6, n.5 and at page 22, with respect to Norflo's allegation that Ald. Preckwinkle somehow prevented Norflo from being on the agenda for a community meeting. While this allegation arguably relates to Ald. Preckwinkle's motives or intent, it does nothing to indicate whether the community meeting was, in any way, shape or form, part of the process for the drafting and introduction into the City Council of the ordinance which Norflo sought.